IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BIG BRIDGE HOLDINGS, INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:14-cv-08052 ) |
| TWIN CITY FIRE INSURANCE COMPANY, | ) **Jury Trial Demanded** ) |
| Defendant. | ) ) |

## COMPLAINT

Big Bridge Holdings, Inc. ("Big Bridge") complains against Twin City Fire Insurance Company ("Twin City") as follows:

### Introduction

1. This insurance coverage dispute concerns Twin City's unjustified refusal to fully honor its contractual defense and indemnity obligations to Big Bridge under a policy of directors and officers liability insurance ("Policy," as further described below) with respect to a series of clearly-covered putative consumer class action lawsuits ("Underlying Claims," as further described below).

2. Although Twin City purported to accept Big Bridge's tender of the defense of the Underlying Claims, Twin City in fact has sought at every turn to delay and limit full performance of its obligations. From the outset, Big Bridge demonstrated willingness to negotiate and compromise with Twin City in a good-faith effort to achieve mutually-acceptable resolutions of issues that Twin City raised – an approach Big Bridge took in order to avoid having to litigate with its own insurer in addition to litigating with the class action claimants. For example, in connection with the first Underlying Claim, Big Bridge agreed to a substantial reduction in the hourly rates that Twin City would use in calculating its defense reimbursement.

As a consequence, Big Bridge agreed to effectively bear a material portion of the cost of its own defense, despite Twin City's clear obligation under the Policy and applicable law to provide a full, undivided defense with regard to the entirety of the Underlying Claims. Big Bridge later agreed that Twin City could apply those same hourly rate reductions to the later-filed Underlying Claims. Despite this and other substantial concessions, Big Bridge has experienced a series of lengthy, unexplained delays in Twin City's payment of even its substantially-reduced defense cost contribution. Yet Big Bridge continued to defer filing suit, preferring to continue working cooperatively with Twin City.

3. However, Big Bridge was forced to seek the Court's assistance when Twin City, in response to the filing of several additional Underlying Claims, abruptly changed its coverage position, seizing on a Policy provision that Twin City contends would reduce the available Policy limit from $3 million to $1 million. The provision Twin City has invoked is inapplicable because it relates solely to claims for anti-competitive or business-directed torts, and not to the Underlying Claims' allegations of violations of consumer protection statutes predicated on fraud or misrepresentation directed to consumers. Yet when challenged, Twin City has elected to stand on its coverage-nullifying position, making this action necessary.

4. Twin City's belated (and wrongful) new position – which if accepted would deprive Big Bridge of two-thirds of the Policy's bargained-for coverage – threatens to substantially prejudice Big Bridge in its ongoing defense of the Underlying Claims. Big Bridge seeks a judicial declaration and contractual damages confirming and reflecting its entitlement to the full benefits of the insurance coverage it purchased.

**Parties**

5. Big Bridge is a Delaware corporation with its principal place of business in Minnesota. Big Bridge is the named insured under the Policy issued by Twin City. The Policy covers the entire Big Bridge organization, including its subsidiary, Sempris, LLC ("Sempris"). Sempris is a business services company that offers loyalty and membership programs, providing discounts at popular restaurants and retailers.

6. Twin City is, on information and belief, an Indiana corporation with its principal place of business in Connecticut.

**Jurisdiction and Venue**

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because the parties are citizens of different States, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Twin City because Twin City has contracted to defend and indemnify Big Bridge against business risk nationwide and in this District, and, upon information and belief, Twin City has transacted business in Illinois; Twin City has contracted to insure persons, property, or risks located in Illinois; and/or Twin City has had other significant contacts with Illinois. Twin City therefore has minimum contacts with Illinois that give rise to the present action and has continuous and systematic contacts with Illinois.

9. Venue is proper under 28 U.S.C. § 1391(a)(2) and (3). A substantial part of the events giving rise to the claims occurred in this District, and Twin City is subject to personal jurisdiction in this District.

**Underlying Claims**

10. Sempris is among the parties named as defendants in the following lawsuits filed by individuals on behalf of putative classes, all alleging that Sempris and other companies enrolled the plaintiff in Sempris's fee-based monthly membership programs without the plaintiff's effective consent:

> *Dioquino v. Sempris, LLC*, No. 11-CV-05556-SJO-MRW (C.D. Cal.)
> *Daniell v. Sempris, LLC*, No. 13-CV-6938 (N.D. Ill.)
> *Valencia v. Sempris, LLC*, No. 12-CV-2985 (S.D. Cal.)
> *Herman v. Sempris, LLC*, No. 13-CV-0020 (W.D. Mich.)
> *Kist v. Sempris, LLC*, No. 13-CV-10262 (D. Mass.)
> *Noonan v. Sempris, LLC*, No. 13-CV-257 (W.D. Wash.)
> *Augustine, v. Sempris, LLC*, No. 13-CV-2007 (D.N.J.)
> *Maher v. Sempris, LLC*, No. 13-CV-257 (D. Minn.)[1]

We refer to these lawsuits collectively in this Complaint as the "Underlying Claims." Copies of the current or last active Complaints in these cases are attached as Exhibits A through H.

11. The *Daniell*, *Herman*, and *Maher* Claims remain pending. The plaintiffs in *Dioquino* and *Valencia* have voluntarily dismissed their Claims without prejudice, while the plaintiff in *Augustine* voluntarily dismissed his Claim with prejudice. *Noonan* was involuntarily dismissed with prejudice, and *Kist* was involuntarily dismissed without prejudice. Sempris denies the plaintiffs' material allegations in the Underlying Claims, and is vigorously defending against them.

---

[1] On June 12, 2013, Sempris received a demand letter from the law firm that filed the Underlying Claims, alleging on behalf of Merle Brown purported wrongful conduct similar to that alleged in the Underlying Claims. However, Brown has not filed a lawsuit against Sempris.

**Insurance Coverage**

12. The Underlying Claims are covered under a $3 million standard-form policy of directors and officers liability insurance that Big Bridge purchased from Twin City for the period March 1, 2011 to March 1, 2012, as Policy No. 00 KB 0241246-11 ("Policy"). A copy of the Policy is attached as Exhibit I.

13. In the Policy, Twin City undertook the obligation to defend and indemnify Big Bridge and its subsidiaries, including Sempris, covering "Defense Costs" and other "Loss" incurred in connection with third-party "Claims" first made during the "Policy Period," alleging "Wrongful Acts," a term the Policy defines in relevant part as "an error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed by . . . an Insured Entity."

14. Each of the Underlying Claims is a Claim against Sempris, an Insured Entity, for alleged Wrongful Acts, as the Policy defines those terms. The *Dioquino* Claim was filed during the Policy Period; the subsequent Underlying Claims were filed after the end of the Policy Period, but are properly deemed to have been first made during the Policy Period pursuant to Policy Section X, "Interrelationship of Claims," because all of the later-filed Underlying Claims share allegations of "Interrelated Wrongful Acts" with *Dioquino*. The plaintiffs all allege that Sempris made or caused to be made misstatements or misleading statements concerning Sempris membership programs during the Policy Period – circumstances that qualify as covered "Wrongful Acts." Each of the Underlying Claims therefore satisfies all of the elements of the Policy's basic insuring agreement.

15. Sempris has reasonably and necessarily incurred covered Defense Costs that have exceeded the Policy's self-insured retention; and it has continued to incur such costs, all of which

5

constitute covered Loss. Twin City bears responsibility for Defense Costs and other covered Loss that exceeds the self-insured retention, subject to the Policy's $3 million Limit of Liability.

16. Because the core purpose of the Policy is to cover exactly the kind of allegations made in the Underlying Claims, Big Bridge promptly tendered each of the Underlying Claims to Twin City, with the expectation that Twin City would fully honor its contractual obligations to provide the coverage for which it accepted substantial premiums. All other conditions that the Policy imposes upon Big Bridge have been satisfied, waived, or are subject to estoppel.

17. During the Policy Period, Big Bridge also was insured under a policy of errors and omissions liability insurance that it purchased from Chartis Specialty Insurance Company (the "Chartis Policy"). The Chartis Policy was a standard-form policy with a $1 million limit of liability. Sempris also was an insured Subsidiary under the Chartis Policy, as the Chartis Policy defines that term. Big Bridge also tendered the Underlying Claims to Chartis.

### The Insurance Coverage Claim

18. Big Bridge timely tendered all of the Underlying Claims to Twin City; negotiated and compromised in good faith concerning defense arrangements and defense cost reimbursement; and otherwise fully complied with its obligations under the Policy. But Twin City, instead of timely and fully honoring its own contractual defense and indemnity obligations, has persistently delayed in responding to Big Bridge; sought to impose *post hoc* "conditions" on its coverage obligations, such as requiring Big Bridge and its counsel to abide by onerous "Litigation Management Guidelines;" delayed reimbursement of Defense Costs owed under the Policy without explanation or justification; and, when Twin City realized its potential exposure had grown due to the filing of additional lawsuits, it invented new arguments in an attempt to unilaterally limit its defense obligations. All of this is squarely at odds with the Policy, Big

Bridge's compromise agreement with Twin City concerning defense arrangements and Defense Cost reimbursement, Twin City's separate agreement to split Defense Costs with Chartis, and applicable law.

***Twin City delays in responding to Big Bridge's initial notice, and then seeks to impose onerous conditions on its acceptance of its defense obligation.***

19. The first of the Underlying Claims was filed during the Policy Period, on July 6, 2011, when the law firm now known as Edelson PC ("Edelson") filed its initial Complaint against Sempris on behalf of plaintiff Evalour Dioquino ("*Dioquino* Claim.")

20. On August 12, 2011, Chartis accepted its defense obligation subject to standard reservations of rights. Twin City's September 2, 2011 response likewise asserted a reservation of rights based on various policy exclusions and limitations, but it also stated that as a condition of accepting its defense obligation, Twin City would require Sempris's chosen defense counsel, Jenner & Block LLP ("Jenner"), to abide by Twin City's unilaterally-imposed hourly rate structure and "Litigation Management Guidelines," none of which are mentioned anywhere in the Policy. Twin City purported to require Jenner to agree to the "Guidelines" not only on behalf of Sempris but also on behalf of all of any other existing and future Jenner clients who may seek coverage from Twin City's parent company, The Hartford, and its various subsidiaries.

21. Sempris's counsel informed Twin City via letter dated September 26, 2011 that Sempris disagreed with Twin City's positions on coverage exclusions and limitations and could not agree to the onerous "Guidelines." However, Sempris also signaled its commitment to working with Twin City and Chartis to negotiate mutually acceptable attorney rates, as well as its willingness to abide by reasonable cost control efforts in defending the Dioquino Claim.

7

22. Sempris also made clear in the September 26 letter that while Twin City and Chartis each had a "present, concurrent, undivided duty to defend Sempris," Sempris would not object to the two insurers working out an agreement to apportion Defense Costs between them.

23. Despite Sempris's indication of its willingness to negotiate with Twin City, Twin City failed to respond to numerous follow-up emails and phone calls from Sempris's counsel during the ensuing months. And despite Sempris's periodic status updates and regular submission of Jenner invoices, Twin City failed without explanation to make any payment of Sempris's Defense Costs.

***Sempris agrees to the Litigation Management Guidelines and a substantial reduction in attorney rates, while Twin City agrees to reimburse Sempris for two-thirds of defense costs incurred in the Dioquino Claim.***

24. Twin City finally responded to Sempris's counsel on January 26, 2012. During a teleconference on that date, the parties negotiated regarding attorney billing rates that Twin City would agree to apply in calculating its Defense Cost reimbursement to Sempris. Although the rates charged by Sempris's counsel were entirely consistent with market rates, Sempris ultimately agreed to a rate structure for reimbursement of attorneys' fees that reflected a significant discount, leaving Sempris to bear a significant portion of its own Defense Costs. Sempris also agreed to a modified version of the "Guidelines," which reflected the parties' agreement as to billing rates as well as the restriction of the "Guidelines" to the *Dioquino* Claim.

25. Chartis and Twin City then struck their own, separate agreement to apportion Defense Costs between them. Under the insurers' agreement, Chartis would pay one-third of the Defense Costs, and Twin City would pay two-thirds.

*Twin City delays in reimbursing Sempris for Defense Costs incurred in the Dioquino Claim.*

26. Despite agreeing to reimburse Sempris for two-thirds of its Defense Costs incurred in the *Dioquino* Claim, Twin City did not make any payment to Sempris until June 21, 2012. Twin City made additional payments to Sempris in August 2012.

27. The parties stipulated to the voluntary dismissal of the *Dioquino* Claim without prejudice on September 13, 2012. Sempris submitted its final invoices for *Dioquino*-related expenses as of November 13, 2012. Those invoices were not paid until May 14, 2013.

28. Chartis reimbursed Sempris for its agreed-upon share of defense expenses on December 20, 2012. Twin City did not respond to Sempris's submission of its invoices.

*Seven additional lawsuits with substantively similar claims and allegations to the Dioquino Claim are filed against Sempris.*

29. Between December 13, 2012 and February 12, 2013, the Edelson firm filed five new lawsuits against Sempris:

- *Bonnie Daniell v. Sempris, LLC*, et al., filed December 13, 2012 in the Circuit Court of Cook County ("*Daniell* Claim");

- *Ricardo Valencia v. Sempris, LLC*, et al., filed December 14, 2012 in the United States District Court for the Southern District of California ("*Valencia* Claim");[2]

- *Eric Herman v. Sempris, LLC*, et al., filed January 7, 2013 in the United States District Court for the Western District of Michigan ("*Herman* Claim");

- *Marcella Kist v. Sempris, LLC*, et al., filed February 11, 2013 in the United States District Court for the District of Massachusetts ("*Kist* Claim");

- *Georgia Noonan v. Sempris, LLC*, et al., filed February 12, 2013 in the United States District Court for the Western District of Washington ("*Noonan* Claim").

---

[2] The *Valencia* lawsuit was voluntarily dismissed without prejudice on March 1, 2013.

9

30. Like the *Dioquino* Claim, the new *Daniell*, *Valencia*, *Herman*, *Kist* and *Noonan* Claims alleged that Sempris violated state and federal consumer protection laws and common law by enrolling the plaintiffs in Sempris membership programs without their effective consent.

31. Through its broker, Sempris promptly tendered the *Daniell*, *Valencia*, *Herman*, *Kist* and *Noonan* Claims to Chartis and Twin City. Chartis accepted its defense obligation for these additional Underlying Claims on March 21, 2013. Twin City did not respond.

32. On March 31, 2013, Plaintiff Joseph Augustine filed a lawsuit against Sempris in United States District Court for the District of New Jersey ("*Augustine* Claim"). Although the *Augustine* Claim was filed by a different law firm, the lawsuit made substantially similar allegations that Sempris violated state consumer protection statutes and common law by enrolling the plaintiff in a Sempris membership program without his effective consent. Through its broker, Sempris promptly tendered coverage of the *Augustine* Claim to Chartis and Twin City. While Chartis promptly accepted coverage, Twin City's silence continued.

33. Sempris repeatedly followed up with Twin City in an effort to obtain a coverage position with respect to the *Daniell*, *Herman*, *Valencia*, *Kist*, *Noonan* and *Augustine* Claims. Sempris received no substantive response to numerous emails and phone calls from Sempris's Chief Financial Officer, broker and counsel.

*Twin City purports to renege on its allocation agreement, and improperly attempts to evade or further limit its defense obligation by invoking an inapplicable Policy exclusion.*

34. Sempris received Twin City's coverage position letter on the new Claims on July 3, 2013 – more than six months after the *Daniell* Claim was filed. By that time, Twin City had not reimbursed Sempris for any of its Defense Costs in nearly a year.

35. In its July 3 letter, Twin City agreed to provide coverage for the *Daniell*, *Valencia*, *Herman*, *Kist*, *Noonan* and *Augustine* Claims subject to a reservation of rights,

10

agreeing that the lawsuits "share enough of a common nexus with the Dioquino matter." However, among other exclusions, Twin City also invoked Section V(A)(5) of the Policy, which states as follows:

> The Insurer shall not pay **Loss** under Insuring Agreement (C) for any **Claim** based upon, arising from, or in any way related to any actual or alleged:
>
> …
>
> (5) price fixing, restraint of trade, monopolization, unfair trade practices or any violation of the Federal Trade Commission Act, Sherman Antitrust Act, Clayton Act, or any similar law regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities; provided, however, this exclusion shall not apply to **Defense Costs** incurred to defend such allegations up to a maximum of the lesser of (i) the remaining amount of the applicable limit of liability listed on the Declarations or (ii) $1,000,000.

36. While Twin City's initial September 2, 2011 coverage position letter had referenced Section V(A)(5), it was for the first time in the July 3, 2013 letter that Twin City took the definitive position that "coverage is precluded for [Plaintiffs'] Claims pursuant to Exclusion V(A)(5)" because Plaintiffs' claims alleged "violations of various state consumer, business protection and unfair trade practices statutes." Twin City failed to mention the exception set out at the end of the Exclusion, permitting coverage for Defense Costs up to a maximum of $1 million.

37. Twin City also reneged on its Defense Cost allocation agreement with Chartis. In the July 3 letter Twin City asserted that under its "analysis of the Policy terms and applicable Minnesota law . . . a 50% allocation of defense costs is appropriate." Twin City cited no Policy provision, statute, regulation or case in support of its new allocation position.

38. Sempris rejected Twin City's unilateral modification of its allocation agreement with Chartis in a letter sent on July 10, 2013, reminding Twin City that it "committed to provide or fund a full defense to all covered claims in their entirety," and that regardless of Chartis's

participation, Twin City's defense obligation was "undivided." Sempris's counsel also explained that Twin City's new position would prejudice Big Bridge and Sempris, as either the lower limit of the Chartis policy would be depleted more quickly, or Sempris would be forced to bear a much higher proportion of its own Defense Costs.

39. On August 14, 2013, the Edelson firm filed a seventh lawsuit against Sempris in United States District Court for the District of Minnesota, on behalf of plaintiff Carol Maher ("*Maher* Claim"). Like the previous Edelson lawsuits, the *Maher* Claim alleged that Sempris violated state consumer protection statutes and common law by enrolling the plaintiff in a Sempris membership program without her effective consent. Through its broker, Sempris promptly tendered coverage of the *Maher* Claim to Chartis and Twin City.

***Twin City contends that the $1 million defense cost sublimit for anti-competitive conduct claims applies to the Underlying Claim.***

40. With the *Maher* Claim, the Underlying Claims grew from one lawsuit to eight. Twin City apparently realized that its potential exposure was much larger than anticipated when it struck its deals with Sempris and Chartis, because it took the position for the first time in a letter dated November 22, 2013 that the $1 million sublimit of liability set forth in Section V(A)(5) applied to the Underlying Claims in their entirety, and notified Sempris of the sublimit's "potential for exhaustion."

41. When Sempris challenged this change in coverage position, Twin City stood on its interpretation of the "unfair trade practices" exclusion in Section V(A)(5), but failed to cite any authority in support of its new position.

42. On September 25, 2014, Twin City notified Sempris that Twin City had processed its final payment on the Policy, and the "$1M sublimit for defense expenses" had been exhausted.

12

43. Twin City's position is incorrect as a matter of fact and law. The weight of authority limits the scope of similar policy language to anti-competitive or business-directed torts. Indeed, at least one federal district court has rejected Twin City's construction of *nearly identical policy language*. *Integra Telecom, Inc. v. Twin City Fire Ins. Co.,* No. 08-906, 2010 WL 1753210 (D. Or. Apr. 29, 2010). On information and belief, no court has applied similar policy language to bar coverage for alleged violations of consumer protection statutes predicated on fraud or misrepresentation directed to consumers.

44. Twin City's invocation of the $1 million sublimit of liability in Section V(A)(5) also is improper for the additional reason that under Minnesota law, which governs the interpretation of the Policy, if even part of a Claim is arguably within the Policy's coverage, the cost of defense is borne entirely by the insurer and is not apportioned. *Jostens, Inc. v. CNA Ins., Continental Cas. Co.*, 336 N.W.2d 544, 545 (Minn. 1983). Further, the Policy's "Common Terms and Conditions" Section XI, "Allocation," provides that in the event of a Claim involving a combination of "both covered and uncovered matters," then "100% of Defense Costs shall be allocated to covered Loss." Each of the Underlying Claims alleges common law fraud and unjust enrichment, neither of which would fall within the scope of Twin City's construction of the "unfair trade practices" exclusion it invokes. Under both Minnesota law and the Policy's own "Allocation" provision, Sempris is owed 100% Defense Cost coverage for all Underlying Claims.

45. Twin City's unilateral and improper reduction of its $3 million policy limit to the $1 million sublimit of Section V(A)(5) could leave Sempris facing a significant coverage gap that would seriously prejudice it in the midst of an ongoing defense effort involving multiple putative class action Claims in multiple jurisdictions. Twin City's refusal to properly accept its

full defense obligation under the Policy is thus exposing Big Bridge and Sempris to potentially significant, allegedly uninsured liability.

## COUNT I
## Declaratory Judgment

46. Big Bridge restates and incorporates paragraphs 1 through 45 above as if fully set forth herein.

47. Big Bridge asserts that Twin City has breached its duty to defend and/or indemnify Sempris, and that Twin City has waived, or is estopped from asserting, Policy exclusions or other coverage defenses, based on at least the following:

      a.    Twin City has refused without justification to reimburse Sempris for Defense Costs reasonably and necessarily incurred in connection with the Underlying Claims to the extent those costs exceed the $1 million sub-limit of liability set forth in Policy Section V(A)(5), forcing Sempris to bear an even more substantial portion of the cost of its own defense.

      b.    Twin City has refused to indemnify Sempris with regard to any judgment or settlement in any of the Underlying Claims, contending incorrectly that coverage is barred under Policy Section V(A)(5).

48. On information and belief, Twin City asserts that it has acted correctly and properly in connection with its duties to defend and indemnify Sempris under the Policy with regard to the Underlying Claims.

49. That dispute presents an actual controversy of a justiciable nature concerning the parties' respective rights and obligations under the Policies, which this Court is authorized to decide pursuant to 28 U.S.C. §§ 2201 and 2202.

## COUNT II
## Breach of Contract

50. Big Bridge restates and incorporates paragraphs 1 through 49 above as if fully set forth herein.

51. Twin City has refused to fully honor its contractual obligations to Big Bridge with respect to the Underlying Claims. Twin City is accordingly in breach of contract.

52. Big Bridge has been damaged by Twin City's contractual breach, in that it has been effectively denied the benefits of the insurance coverage for which it contracted and for which Twin City collected substantial premiums; Twin City's breach is exposing Big Bridge to potentially significant, allegedly uninsured liability; and Big Bridge has been forced to incur the substantial burden and further disruption of bringing and litigating this action.

## Jury Demand

Big Bridge demands a jury on all issues triable to a jury.

## Prayer For Relief

WHEREFORE, Big Bridge respectfully requests that the Court grant it the following relief:

1. A declaration that Twin City is contractually obligated to fully defend and indemnify Sempris with respect to the Underlying Claims, subject to the Policy's $3 million Limit of Liability;

2. An award of the actual and consequential damages that Big Bridge has sustained as a result of Twin City's contractual breach, plus pre- and post-judgment interest, in amounts to be determined at trial;

3. Such additional relief in Big Bridge's favor as the Court deems appropriate.

                                                  BIG BRIDGE HOLDINGS, INC.

Dated: October 15, 2014                By:  s/ Craig C. Martin
                                                      One of Its Attorneys

Craig C. Martin
CMartin@jenner.com
Christopher C. Dickinson
CDickinson@jenner.com
Brienne M. Letourneau
BLetourneau@jenner.com
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350