## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BIG BRIDGE HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14-cv-8052 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| TWIN CITY FIRE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This is an insurance dispute regarding whether a certain claim is covered under an insurance policy, or whether that claim falls into a coverage exception within the policy. Before the Court are Defendant's motion for summary judgment [19] and Plaintiff's cross-motion for partial summary judgment [22]. For the reasons set forth below, Defendant's motion for summary judgment [19] is denied and Plaintiff's cross-motion for partial summary judgment [22] is granted. The case is set for a status hearing on 10/6/2015 at 9:00 a.m. to discuss how the parties wish to proceed with the remaining claims.

## I.    Background

The Court takes the relevant facts from the parties' Local Rule 56.1 statements, construing the facts in the light most favorable to the nonmoving party.[1] Here, the identity of the nonmoving party depends on whose motion the Court is considering.

---

[1] Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and entitles the movant to judgment as a matter of law. The rule permits a movant to file up to 80 separately-numbered statements of undisputed facts. L.R. 56.1(a)(3). The rule also requires the nonmovant to file a concise response to the movant's statement of facts setting forth "any disagreement, specific references to the affidavits, parts of the record, and other supporting materials." L.R. 56.1(b)(3)(A).

A.    **Undisputed Facts**

1.    **The Insurance Dispute**

Plaintiff Big Bridge purchased a $3 million liability-insurance policy (the "Policy") from Defendant Twin City, covering the period from March 1, 2011 to March 1, 2012. The Policy covers the entire Big Bridge organization, including its subsidiary, Sempris, LLC. Sempris sells membership programs that provide discounts at various restaurants and retailers.

Between July of 2011 and August 2013,[2] Sempris was sued eight times in various federal courts across the country. The claims against Sempris, as explained in more detail below, allege generally that Sempris enrolled consumers in fee-based monthly membership programs without their consent. The claims allege a myriad of state- and federal-law violations, brought on behalf of putative classes.

In accordance with its obligations under the Policy, Defendant confirmed via letter dated September 2, 2011 that it would provide a defense for Sempris with regards to the first-filed lawsuit. By July 3, 2013, the number of cases increased to seven.  When the eighth and final case was filed, Defendant informed Plaintiff (by letter dated November 22, 2013) that it was denying coverage for any losses exceeding $1,000,000. And indeed, Defendant did pay $1,000,000 in defense costs to or on behalf of Sempris in connection with these eight lawsuits, with the final payment processed as of September 25, 2014.

On October 15, 2014, Plaintiff filed this two-count lawsuit, raising (1) a declaratory-judgment claim that Defendant has breached its duty to defend and/or indemnify Sempris, and that Defendant has waived, or is estopped from asserting, Policy exclusions or other coverage defenses, and (2) a related breach-of-contract claim that Defendant has breached the Policy by

---

[2] Even though some of the claims at issue arose outside of the coverage period, the parties agree that those claims are included under the Policy because the later-filed claims share allegations of "Interrelated Wrongful Acts" with the timely-filed claim, creating a single interrelated claim. [See 23, at 7–8.]

failing to provide coverage in the full amount of the Policy. In its answer [12], Defendant raised

a counter-claim for declaratory relief, seeking (1) a declaration that Plaintiff's claim is barred by

Section V(A)(5) of the Policy, and (2) a declaration that Plaintiff's claim is barred in whole or in

part on other grounds (not relevant to this motion). Now before the Court are Defendant's motion

for summary judgment [19] seeking resolution in its favor on all counts of the complaint and

Count I of its counterclaim, and Plaintiff's cross-motion for partial summary judgment [22]

seeking only a declaration that its claim is not barred by Section V(A)(5) and thus that Defendant

cannot refuse coverage on that basis.[3]

### 2. The Underlying Cases

The Court provides the following overview of the eight underlying lawsuits at issue:

(1)   *Dioquino v. Sempris, LLC*, No. 11-cv-05556-SJO-MRW (C.D. Cal.)
  - **Filing Date:** July 6, 2011
  - **Claims Against Sempris:** Putative class action alleging violations of (1) California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*), (2) California Unfair Competition Law (Cal. Bus. & Prof. § 17200, *et seq.*), (3) Electronic Funds Transfer Act (15 U.S.C. § 1693e), (4) Unjust Enrichment, (5) Negligence, and (6) Fraud by Omission.

(2)   *Daniell v. Sempris, LLC*, No. 13-cv-6938 (N.D. Ill.)
  - **Filing Date:** December 13, 2012
  - **Claims Against Sempris:** Putative class action alleging violations of (1) Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS § 505/1, *et seq.*),

---

[3] There is some ambiguity as to exactly which claims and/or counterclaims are at issue here. For example, in its motion for partial summary judgment, Plaintiff asks the Court to "declare that Twin City has a duty to defend Sempris against the Underlying Claims up to and including the full $3 million Policy Limit." [22, at 2.] Because Plaintiff requests a declaration, this implies that Plaintiff is seeking summary judgment on Count I of its complaint (*i.e.*, the declaratory judgment count) [see 1, at 14]. But Count I contemplates *two* potential declarations—"that Twin City has breached its duty to defend and/or indemnify Sempris, **and** that Twin City has waived, or is estopped from asserting, Policy exclusions or other coverage defenses [1, at 14 (emphasis added)]—but Plaintiff only briefs the first of those two issues. Similarly, Defendant moved for summary judgment on both Counts I and II of Plaintiff's complaint, but Defendant also failed to brief the second issue in Count I (which, incidentally, corresponds somewhat with Count II of Defendant's counterclaim [see 12, at 36–37], which is not at issue in this order). While it's unclear exactly which counts (or parts of counts) are at issue here, what is clear is the parties' concern over whether coverage of the underlying lawsuits is subject to the Section V(A)(5) exception. The parties can hash out what, if any, issues remain after this core issue is decided.

(2) Fraud by Omission, (3) Fraudulent Inducement, (4) Breach of Contract, and (5) Unjust Enrichment.

(3)    *Valencia v. Sempris, LLC*, No. 12-cv-2985 (S.D. Cal.)
- **Filing Date:** December 14, 2012
- **Claims Against Sempris:** Putative class action alleging violations of (1) California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*), (2) California Unfair Competition Law (Cal. Bus. & Prof. § 17200, *et seq.*), (3) Fraud by Omission, and (4) Unjust Enrichment.

(4)    *Herman v. Sempris, LLC*, No. 13-cv-0020 (W.D. Mich.)
- **Filing Date:** January 7, 2013
- **Claims Against Sempris:** Putative class action alleging violations of (1) Michigan Consumer Protection Act (M.C.L. § 445.903 *et seq.*), (2) Electronic Funds Transfer Act (15 U.S.C. § 1693e), (3) Fraudulent Inducement, (4) Breach of Contract, (5) Unjust Enrichment, and (6) Violation of the Telephone Consumer Protection Act (47 U.S.C. § 227).

(5)    *Kist v. Sempris, LLC*, No. 13-cv-10262 (D. Mass.)
- **Filing Date:** February 11, 2013
- **Claims Against Sempris:** Putative class action alleging violations of (1) Mass. Consumer Protection Law (M.G.L. c. 93A), (2) Fraud by Omission, (3) Breach of Contract, (4) Breach of Implied Covenant of Good Faith and Fair Dealing, and (5) Unjust Enrichment.

(6)    *Noonan v. Sempris, LLC*, No. 13-cv-0257 (W.D. Wash.)
- **Filing Date:** July 6, 2011
- **Claims Against Sempris:** Putative class action alleging violations of (1) Washington Consumer Protection Act (RCW ch. 19.86), (2) Washington Consumer Protection Act (RCW ch. 19.56), and (3) Unjust Enrichment.

(7)    *Augustine v. Sempris, LLC*, No. 13-cv-2007 (D.N.J.)
- **Filing Date:** March 31, 2013
- **Claims Against Sempris:** Putative class action alleging violations of (1) New Jersey Consumer Fraud Act (N.J.S.A. § 56:8-1 *et seq.*), (2) Common Law Fraud by Omission, (3) Unjust Enrichment, and (4) Truth in Consumer Contract, Warranty and Notice Act (N.J.S.A. § 56:12–14 *et seq.*).

(8)    *Maher v. Sempris, LLC*, No. 13-cv-2202 (D. Minn.)
- **Filing Date:** August 14, 2013
- **Claims Against Sempris:** Putative class action alleging violations of (1) Minnesota Prevention of Consumer Fraud Act (Minn. Stat. § 325F.68 *et seq.*), (2) Minnesota Deceptive Trade Practices Act (Minn. Stat. § 325D.43 *et seq.*), (3) Minnesota Consumer Prevention; Solicitation of Sales Act (Minn. Stat. § 325G.12 *et seq.*), (4) Fraud by Omission, (5) Fraudulent Inducement, (6) Breach of Contract, and (7) Unjust Enrichment.

## II.   Legal Standard

### A.   Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also *Sallenger v. City of Springfield, Ill.*, 630 F. 3d 499, 503 (7th Cir. 2010) (citing Fed. R. Civ. P. 56(c)(2) and noting that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law"). In determining whether summary judgment is appropriate, the court should construe all facts and reasonable inferences in the light most favorable to the non-moving party. See *Carter v. City of Milwaukee*, 743 F. 3d 540, 543 (7th Cir. 2014). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Put another way, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

To avoid summary judgment, the opposing party then must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Koszola v. Bd. of Educ. of City of Chi.*, 385 F. 3d 1104, 1111 (7th Cir. 2004). In other words, the "mere existence of a scintilla of evidence in support of the

[non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## B. Applicable Substantive Law

The parties are before this Court on diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff Big Bridge is a Delaware corporation with its principal place of business in Minnesota. Twin City is an Indiana corporation with its principal place of business in Connecticut. The parties agree that Minnesota law governs.[4] [20, at 5 n.2; 23, at 7 n.1.]

Under Minnesota law, "the interpretation of insurance policies is a question of law" properly decided on a motion for summary judgment. *Home Ins. Co. v. Nat'l Union Fire Ins. of Pittsburgh*, 658 N.W.2d 522, 527 (Minn. 2003) (citing *Sentinel Mgmt. Co. v. Aetna Cas. & Sur. Co.*, 615 N.W.2d 819, 827 (Minn. 2000).

## III. Analysis

### A. The Insurance Policy

The dispute essentially boils down to the parties' competing interpretations of the following provision, Section V(A)(5) of the Policy's Directors, Officers and Entity Liability Coverage Part:

> The insurer shall not pay **Loss** under Insuring Agreement (C) in connection with any **Claim** based upon, arising from, or in any way related to any actual or alleged:

---

[4] Federal courts sitting in diversity apply the choice of law principles of the forum state (Illinois here) to determine which state's law governs the proceeding. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *West Bend Mut. Ins. Co. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013). Illinois law says that when an insurance contract covers risk located in multiple states (assuming there is a conflict in those states' laws), "courts focus on the domicile of the insured, and where the negotiations, purchase, and issuance of the insurance policies took place. *G.M. Sign, Inc. v. Pennswood Partners, Inc.*, --- N.E.3d ---, 2015 WL 2231752, at *9 (Ill. App. Ct. May 13, 2015). Here, Big Bridge has its principal place of business in Minnesota, and the policy was delivered to Big Bridge in Minnesota. As such, if there is a conflict amongst the insurance laws of the states involved, the Court agrees that Minnesota law would govern the substantive issues here. As explained below, the choice-of-law analysis is inconsequential to this order because both Illinois and Minnesota law align as to the basic principles governing this issue.

\* \* \*

(5) price fixing, restraint of trade, monopolization, *unfair trade practices* or any violation of the Federal Trade Commission Act, Sherman Antitrust Act, Clayton Act, or any similar law regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities; provided, however, this exclusion shall not apply to **Defense Costs** incurred to defend such allegations up to a maximum of the lesser of (i) the remaining amount of the applicable limit of liability listed on the Declarations or (ii) $1,000,000.

[7-8, at 25 (italics added); 21-2, at 25 (same).] The question is whether the eight underlying lawsuits should be considered, in the aggregate, a "[c]laim based upon, arising from, or in any way related to any actual or alleged \* \* \* unfair trade practices."

The phrase "unfair trade practices" is not defined in the Policy. Defendant is not bothered by this omission, relying instead on a plain-language argument that each of the eight complaints includes claims of unfair business practices that clearly trigger the exception in Section V(A)(5). Defendant buttresses its argument by noting the broadly-worded prefatory language in the exception, which incorporates *any* claim *based upon*, *arising from*, or *in any way related to any actual or alleged* unfair trade practices. [See 20, at 8 (citing cases).] While the Court agrees that the prefatory language is broad, that does not help to define "unfair trade practices."

In order to understand the scope of a contractual term, it is necessary to consider the context in which the term appears, reading the provision as a whole. See *Econ. Premier Assur. Co. v. Western Nat'l Mut. Ins. Co.*, 839 N.W.2d 749, 752 (Minn. 2013); *Halla Nursery, Inc. v. City of Chanhassen*, 781 N.W.2d 880, 884 (Minn. 2010) ("[T]he terms of a contract are not read in isolation."). In Section V(A)(5), there are eight separate categories of claims that are excluded from coverage:

1.      Claims involving price fixing;
2.      Claims involving restraint of trade;
3.      Claims involving monopolization;
4.      Claims involving unfair trade practices;
5.      Claims involving violations of the Federal Trade Commission Act;

6.        Claims involving violations of the Sherman Antitrust Act;

7.        Claims involving violations of the Clayton Act;

8.        Claims involving violations of any similar law regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities.

Read as a whole, these eight categories are best described as relating to antitrust violations. One need look no further than the catch-all exception (No. 8) to reach this conclusion, as that exclusion describes the prior seven exclusions (or at least the prior three) as laws "regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities."

In contrast, the claims in the eight underlying lawsuits are best described as fraud-based consumer-protection claims alleging deceptive (not anti-competitive) business practices. But again, Defendant is not bothered by this, arguing that the phrase "unfair trade practices" encompasses *both* consumer-protection and antitrust claims (much like the FTC Act, which has both a consumer-protection component and an antitrust component). While there is some appeal to this argument, the total absence of any mention of fraud-based or consumer-protection claims in Section V(A)(5), coupled with the plain-language categorization of these exceptions in the catch-all provision as anti-competitive in nature, counsel in favor of reading "unfair trade practices" as referencing that term as used in the antitrust context. See *Brookdale Pontiac-GMC v. Federated Ins.*, 630 N.W.2d 5, 9 (Minn. App. Ct. 2001) ("[L]ooking at the contact as a whole," a list of illustrative terms "must be construed as a list of similar terms.").

At a minimum, the phrase "unfair trade practices" is ambiguous as used in Section V(A)(5). And in the insured-friendly state of Minnesota, "[a]ny ambiguity is resolved in favor of the insured, and the burden is on the insurer to prove that the claim clearly falls outside the coverage afforded by the policy." *Prahm v. Rupp Const. Co.*, 277 N.W.2d 389, 390 (Minn. 1979) ("If any part of a cause of action is arguably within the scope of coverage, the insurer must

defend."); *Carye v. Ill. Farmers Ins. Co.*, 2006 WL 3719479, at \*2 (Minn. Ct. App. Dec. 19, 2006) ("Exclusions are interpreted strictly against the insurer and any ambiguity is resolved in favor of the insured." (citations omitted)).[5] Even construing the facts in the light most favorable to Defendant, Defendant's arguments (at best) create an ambiguity as to the meaning of "unfair trade practices." As such, Defendant has failed to meet its burden, and the ambiguity must be resolved in Plaintiff's favor.

Other courts have reached similar conclusions. In *Beyer v. Heritage Realty, Inc.*, 251 F.3d 1155 (7th Cir. 2001), the Seventh Circuit decided whether a real estate company's insurance claim for losses it incurred litigating a class-action lawsuit—involving allegations that the real estate company violated the Real Estate Settlement Procedures Act of 1974 ("RESPA") by failing to make certain disclosures required under the Act—was covered by the real estate company's insurance policy. The policy excluded coverage for claims based on "deceptive trade practices," and so the question was whether the underlying RESPA violation qualified as a "deceptive trade practice" as contemplated by the policy, which read as follows:

> **Price fixing.** We won't cover loss that results from any violation of any state or federal antitrust, price fixing, restraint of trade or deceptive trade practice law, rule or regulation * * *.

*Beyer*, 251 F.3d at 1157.

Reading the provision as a whole, the court recognized the antitrust-nature of the exclusion, commenting that "RESPA has nothing to do with antitrust or 'restraint of trade' in general, or price fixing in particular." *Id.* at 1157. However, analogizing to the FTC Act as "the

---

[5] Even if the Court were to apply the law of the forum state, Illinois law also says that "where language in an insurance policy is subject to different interpretations such ambiguity is to be construed in favor of the insured, and not the insurance company, which drafted the contract of insurance." *Dora Twp. v. Ind. Ins. Co.*, 400 N.E.2d 921, 922 (Ill. 1980); *Am. Economy Ins. Co. v. DePaul Univ.*, 890 N.E.2d 582 (Ill. App. Ct. 2008) ("Further, '[p]rovisions in an insurance policy that limit or exclude coverage are also construed liberally in favor of the insured and against the insurer.'" (quoting *United Servs. Auto. Ass'n v. Dare*, 830 N.E.2d 670, 678 (Ill. 2005))).

model 'deceptive trade practice law," the court noted that "[t]he FTC is divided internally into a Bureau of Competition and a Bureau of Consumer Protection," and "deceptive trade practices" could describe claims that fall into both categories, meaning that a broad reading of the phrase would extend the exclusion beyond the antitrust realm. But the court then noted that putting the emphasis on *trade* in "deceptive trade practices" would point more toward a Bureau of Competition (read: antitrust) issue, and "if this is a potentially sensible reading of the exclusion, then the rule of insurance law resolving ambiguities in favor of policyholders" would require a resolution in favor of the insured. *Id.* at 1157–58 (internal citation omitted). The court also referenced the fact that "[t]he insurance policy at issue [wa]s *limited* to participants in the real estate business," and that it would be "weird" (and possibly deceptive) for the insurer to exclude coverage for all violations of RESPA without even mentioning RESPA at all in the policy. *Id.* at 1158. Ultimately the court scoffed at the insurers attempt to shoehorn RESPA (and, by extension, many other laws proscribing forms of nondisclosure) "in[to] a clause captioned '**Price fixing**' and sounding distinctly like an antitrust exclusion," holding that violations of RESPA were covered by the policy. *Id.*

Similarly here, even if "unfair trade practices" could refer to both antitrust violations and consumer-fraud violations, Minnesota's rule of insurance law resolving ambiguities in favor of insureds would put Plaintiff's claim outside of the exception. In addition, it would be an odd bit of contract drafting to aim to incorporate consumer-protection and other fraud-based violations into an exclusion that self-identifies as relating to "antitrust, monopoly, price fixing, price discrimination, predatory pricing [and] restraint of trade activities" without mentioning the words "fraud" or "consumer protection" at all.

And in *Integra Telecom, Inc. v. Twin City Fire Ins. Co.*, 2010 WL 1753210 (D. Or. Apr. 29, 2010), the district court rejected a similar argument (from Defendant Twin City) based on a substantively identical policy exclusion in a factually analogous case. The policy at issue in *Integra* excluded coverage for any claim:

> based upon arising from, or in any way related to price fixing, restraint to trade, monopolization, **unfair trade practices** or any violation of the Federal Trade Commission Act, Sherman Anti-Trust Act, Clayton Act, or any similar law regulating anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities.

*Integra*, 2010 WL 1753210, at \*1. In that case, the insured's claim stemmed from losses it incurred in an underlying lawsuit where the insured was found to have engaged in an "unfair or deceptive act or practice" in violation of Washington's Consumer Protection Act by charging and collecting improper surcharges for telecommunications services. *Id.* at \*2. The district court held that the underlying "unfair or deceptive act or practice" was not an "unfair trade practice" as contemplated by the policy, primarily because the exclusion was reasonably read as limited to anti-competitive conduct, rendering the provision (at a minimum) ambiguous, and thus requiring a construction of the exclusion in the insured's favor. *Id.* at \*4. The court focused on the catch-all exclusion at the end of the provision, noting that the phrase "any similar law" modified all preceding laws listed in the exclusion, meaning that the provision as a whole was properly defined as one excluding claims involving "anti-trust, monopoly, price fixing, price discrimination, predatory pricing [and] restraint of trade activities." *Id.* at \*5.

*Beyer* and *Integra* are directly on point. The plain language of Section V(A)(5), read as a whole, excludes antitrust violations and other anti-competitive conduct. Any argument that the exclusion should be read broadly because certain antitrust laws mentioned in the exclusion (*e.g.*, unfair trade practices and the FTC Act) have applications beyond the antitrust realm is unavailing. If the insurers wanted to include consumer-protection or consumer-fraud violations

11

into the exclusion, they should have mentioned those well-known bodies of law expressly, not indirectly through a provision clearly aimed at antitrust laws. But to resolve the issue, the Court need only find ambiguity in the language of the exclusion. Because "unfair trade practices" is, at a minimum, ambiguous, the Court must follow Minnesota law, whereby "[a]ny ambiguity is resolved in favor of the insured." *Prahm*, 277 N.W.2d at 390.

## IV.    Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [19] is denied and Plaintiff's cross-motion for partial summary judgment [22] is granted. The underlying claims at issue lie beyond the scope of the Section V(A)(5) exclusion, and thus that exclusion is not a viable basis for Defendant Twin City to deny Sempris coverage with regard to the underlying claims up to and including the full $3 million Policy limit. The case is set for a status hearing on 10/6/2015 at 9:00 a.m. to discuss how the parties wish to proceed with their remaining claims not resolved in this order.


Dated: September 15, 2015                    _____
                                             Robert M. Dow, Jr.
                                             United States District Judge

12